**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ERIC V. LOMAX,                         :

    Petitioner,                       :   Civil Action No. 12-3125 (JBS)

        v.                             :   **OPINION**

CHRISTOPHER HOLMES, et al.,            :

    Respondents.                      :
_____

**APPEARANCES:**

Eric V. Lomax, *Pro Se*
149359C
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

Nancy P. Scharff, Esq.
Camden County Prosecutor's Office
25 North Fifth Street
Camden, NJ 08102
Attorney for Respondents

**SIMANDLE, Chief Judge**

    Petitioner, Eric V. Lomax, submitted this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and Respondents submitted an answer to the petition (Docket Items 8-11), with the available state court record. For the following reasons, the petition will be denied.

**BACKGROUND**

1. Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division"), deciding Petitioner's direct appeal.[1]

> On October 16, 1990, Wendy [Vaughns], a Marine Corp[s] corporal, was found dead in her Cherry Hill apartment, the victim of twenty-six stab wounds in the area of her heart and neck. Her throat had been slashed and there was a knife handle embedded in her chest. Defendant, a Navy petty officer, and the victim had been living together in the apartment. Defendant was a married man. On the evening of October 15, 1990, defendant, his wife, and the victim spent several hours together in the apartment arguing about their relationship. After the wife left, the victim and defendant continued to argue. Defendant testified he left the apartment after the victim had twice attacked him with a knife and that she was alive the last time he saw her.
>
> The evidence of defendant's guilt was overwhelming. Numerous witnesses testified during the trial that they heard banging and screaming in the early morning hours of October 16, 1990. One witness identified defendant by his voice as being present in the apartment at or about the time the screams were heard. A neighbor testified that he saw a black male leaving the apartment at about the same time and drive away in the victim's white Honda. The record reflects

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

2

> defendant was involved in an accident while driving the victim's vehicle on the [Pennsylvania] Turnpike later that morning and was hospitalized.
>
> DNA testing was performed and the record discloses the blood on the knife and various items of clothing matched known blood samples from both the victim and defendant.

(Ra 9, *State v. Lomax*, A-5277-92T4 (Apr. 4, 1995), at pp. 2-3).

2.  <u>Procedural Background</u>

On April 26, 1991, Petitioner was indicted by a Camden County Grand Jury for first-degree murder and possession of a weapon for an unlawful purpose, contrary to New Jersey law (Ra 1). A jury found him guilty of both counts. On March 19, 1993, Petitioner was sentenced to a term of life imprisonment, with a thirty-year parole disqualifier (Ra 3).

The Appellate Division affirmed the conviction and sentence on April 4, 1995 (Ra 9). On July 6, 1995, the New Jersey Supreme Court denied Petitioner's petition for certification (Ra 13).

On March 8, 1996, Petitioner filed a post-conviction relief motion in the trial court ("PCR") (Ra 14). An evidentiary hearing was held on April 25, 1997, and on June 3, 1997, the PCR court denied the motion (Ra 26). On May 5, 1998, the Appellate Division remanded the case for a hearing. The trial court held the hearing and again denied Petitioner's PCR motion (Ra 59). The Appellate

3

Division affirmed the denial on November 29, 1999 (Ra 64), and the New Jersey Supreme Court denied certification on October 31, 2000 (Ra 70).

Petitioner filed a habeas petition in this Court on November 5, 2001 (Ra 71). The petition was dismissed on July 11, 2003, without prejudice, for failure to exhaust state remedies (Ra 73). On January 27, 2010, Petitioner filed a second PCR motion, which was denied on April 12, 2010 (Ra 77). The Appellate Division affirmed the denial on May 3, 2011 (Ra 80) and the New Jersey Supreme Court denied certification on October 20, 2011 (Ra 83).

Petitioner filed this habeas petition thereafter, and was informed of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). Respondents answered the petition and filed the relevant state court record. This Court has reviewed all submissions.

## PETITIONER'S CLAIMS

In his petition (Docket Item 1), Petitioner sets forth two grounds for habeas relief: (1) Petitioner's right to a speedy trial was violated; and (2) ineffective assistance of counsel. Respondents argue that Petitioner's case has no merit, and because he failed to timely file his second PCR motion, the

4

claims presented therein are procedurally defaulted. (Answer, Docket Item 8).

## DISCUSSION

### A. Section 2254 Cases

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts

the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). *Id.* at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. *See id.* at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of

inferior federal courts. *See Matteo v. Superintendent*, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004) (citing *Early v. Packer*, 537 U.S. 3 (2002); *Woodford v. Visciotti*, 537 U.S. 19 (2002)), *cert. denied*, 543 U.S. 1093 (2005).

Further, "Habeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and set forth "facts supporting each of the grounds thus specified." See 28 U.S.C. § 2254 Rule 2(c) (amended Dec. 1, 2004).

**B.    Petitioner's Speedy Trial Claim**

Petitioner argues that his due process rights were violated because of the delay in bringing him to trial. He notes that he was arrested on October 17, 1990 and was extradited to New Jersey on March 11, 1991.  His case did not go to trial until January 27, 1993, and he was sentenced on March 19, 1993 to life imprisonment, with a thirty-year parole disqualifier. (Petition, p. 9). Respondents argue that Petitioner's claim is

7

meritless, as the state courts followed clearly established federal law in rejecting the speedy trial claim. (Answer, p. 33).

The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. The right to a speedy trial is "fundamental" and is imposed on the states by the Due Process Clause of the Fourteenth Amendment. *See Kloper v. North Carolina*, 386 U.S. 213, 223 (1967); *see also Barker v. Wingo*, 407 U.S. 514 (1972). In *Barker*, the Supreme Court set forth four factors to be weighed and balanced to determine whether the Sixth Amendment's guarantee of a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant. *See id.* at 530; *see also United States v. Dent*, 149 F.3d 180, 184 (3d Cir. 1998), *cert. denied*, 525 U.S. 1085 (1999).

As noted by the Court of Appeals for the Third Circuit, "[t]he length of the delay figures into the speedy trial analysis twice. First, it is used to determine whether *Barker* is triggered at all. *Hakeem v. Beyer*, 990 F.2d 750, 759-60 (3d Cir. 1993). If the delay is long enough to trigger *Barker*, it is then analyzed as 'one factor among several,' and courts should measure the

8

'extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'" *Conroy v. Leone*, 316 F. App'x 140, 143 (3d Cir. 2009) (citing *Doggett v. United States*, 505 U.S. 647, 652 (1992)).

In the present case, Petitioner raised this claim in his PCR motion. In fact, an evidentiary hearing was conducted by the PCR court wherein Petitioner's counsel testified regarding the time lapse between the arrest and the trial start date. Counsel noted various adjournments and a continuance due to a death in counsel's family. (Rta 10 at pp. 25-48). The PCR court detailed the procedural history of the trial, including the number of adjournments, and recognized that the nature of a homicide case required investigation and discovery exchanges. (Rta 10 at pp. 96-103). The Court then reviewed the *Barker* factors, noted above, and found that Petitioner never raised his speedy trial claims prior to the PCR motion, that some of the delays were requested by the defense or jointly with the prosecution, and that there was no evidence that the delays adversely affected the merits of the trial. (Rta 10 at pp. 103-04). The Court further found that the delay "arose out of fundamental fairness to both the defense and the State." (Rta 10 at p. 105).

The Appellate Division addressed this issue in its decision affirming the denial of Petitioner's PCR motion, stating:

> We next consider defendant's argument that the passage of 818 days between his arrest and trial violated his right to a speedy trial under the United States and New Jersey Constitutions. We note first that defendant never moved to dismiss his indictment on speedy trial grounds. See R. 3:25-3. Therefore, we could reject this argument solely because defendant never presented it to the trial court. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Nonetheless, we have carefully reviewed the record in light of the arguments advanced and the applicable law and conclude the argument is without merit. R. 2:11-3(e)(2). We add only these brief comments.
>
> The factors applied in passing upon a speedy trial claim are: "(1) the length of the delay, (2) the reasons for the delay, (3) whether and how defendant asserted his speedy trial right, and (4) the amount of prejudice to defendant caused by the delay." State v. Long, 119 N.J. 439, 470 (1990) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).
>
> At the PCR hearing, Judge Natal carefully reviewed these factors in light of the chronology of events which led to the delay, correctly observing that defendant himself contributed to the delay and concluding that there was "no evidence that this delay affected the merits of his trial." We are satisfied there were legitimate and substantial reasons for the delay in defendant's trial, and are satisfied that his right to a speedy trial was not violated. Accordingly, we affirm substantially for the reasons expressed by Judge Natal in his well-analyzed and thorough oral opinion on April 25, 1997.

(Ra 64 at pp. 11-12, *State v. Lomax*, A-6971-96T4 (Nov. 29, 1999)).

10

Having carefully reviewed the state court record in this matter, this Court concludes that Petitioner's Sixth and Fourteenth Amendment rights were not violated by the delay. Based on the justifications for the delays, this Court agrees with the state courts that the *Barker* factors have not been met. The state courts relied on *Barker* in making the determination that Petitioner's speedy trial rights were not violated and applied the *Barker* factors in a reasonable manner; thus, the state court determinations are neither contrary to nor an unreasonable application of the governing Supreme Court law. Petitioner is not entitled to habeas relief on this claim.

**C.      Petitioner's Ineffective Assistance Claims**

    1.      Standard for Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable

11

professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional

12

judgments support the limitations on investigation." *Id.* at 690-91. If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. *See Berryman v. Morton*, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

   2.  Petitioner's Claims

   Petitioner argues in his petition:

>     Four months after petitioner was arrested, Yeda ("Dee Dee") Rosenthal, who lived in the same apartment complex, was reported missing. In October 1995, Charles E. "Crazy Eddie" Reddish, Jr., a maintenance man at the same apartment complex, was charged with murdering his girlfriend, Robecca Wertz. Reddish also confessed to murdering Rosenthal during a break-in and robbery. All throughout petitioner's pre-trial custody, he pleaded with counsel to investigate the Rosenthal disappearance and see if it and any connection to petitioner's case.

(Petition, p. 11). This matter was remanded to the PCR court to allow Petitioner to submit affidavits. Petitioner claims that after records were subpoenaed, the PCR judge limited the inquiry to Reddish's attorney, not Reddish himself, denying a motion to compel. He further complains of the PCR judge denying an evidentiary hearing on the second PCR motion. (Petition, pp. 13-17).

13

The state courts examined Petitioner's claims. The Appellate Division explained the basis for the claim and found:

> Defendant asserts that he was deprived of his constitutional right to effective assistance of counsel at the trial level because trial counsel: (1) did not move to dismiss the indictment for lack of a speedy trial; (2) did not move to dismiss count one of the indictment for improper phraseology; and (3) did not adequately investigate whether other murders had taken place at Vaughns's Cherry Hill apartment complex.
>
> In light of our previous discussion, we are satisfied that claims (1) and (2) are without merit and require no further discussion. R. 2:11-3(e)(2). As for claim (3), Judge Natal rejected defendant's ineffectiveness claim that trial counsel failed to fully investigate the case, noting that:
>
>> a full and thorough investigation was made. The decisions made were within the trial strategy. He had numerous meetings with the defendant. He did an investigation. He had investigators assigned to him full time. He investigated multiple theories, did investigations as to other crimes. And I'm satisfied that there was a full and proper investigation in this matter. For that reason I find that this fails to meet the prong set forth in Strickland and Fritz.
>
> Essentially, defendant argued that trial counsel's representation was constitutionally defective because he should have discovered before the trial that another woman had been murdered in the same complex four months after Vaughns's death.
>
> [The PCR court then went on to summarize and quote *Strickland* and other similar cases.]
>
> We agree with the PCR judge that defendant failed to demonstrate that trial counsel's investigation

14

> efforts were deficient. Counsel contacted the Cherry Hill Police, the Courier Post, and the Philadelphia Inquirer, all in an effort to discover evidence of other crimes committed during the time in which Vaughns was murdered. He talked to defendant and witnesses. At the PCR hearing, he testified that in his thirteen-year career, he probably spent more time on defendant's case than he had on any other. That counsel did not learn until after defendant's trial had concluded that another murder had occurred in Vaughns's complex four months after she was killed, does not equate with a constitutional claim for ineffectiveness of counsel. In sum, there was nothing presented to the trial court that would satisfy the requirements of Strickland and Fritz on this ineffective assistance of counsel claim.

(Ra 64 at pp. 12-14 (internal footnotes omitted)).

A thorough review of the record reveals that counsel was not deficient in handling Petitioner's case. The PCR court and the Appellate Division adequately examined and properly determined that Petitioner's theory regarding other possible perpetrators of the crime for which he was found guilty was based on little more than speculation. The evidence of Petitioner's guilt was strong and compelling, including witness testimony and Petitioner's DNA evidence and his own testimony.

The Court is satisfied that none of the ineffective assistance of counsel claims presented by Petitioner is sufficient to warrant habeas relief. As the state courts correctly relied on *Strickland*, the state courts' decisions were neither contrary to, nor involved an unreasonable application

15

of, clearly established federal law. An examination of the record also reveals no evidence that they were based on an unreasonable determination of the facts presented in the state court proceedings. Petitioner is not entitled to relief on this claim.

**D.     Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

16

## CONCLUSION

For the reasons set forth above, the Petition for a Writ of Habeas Corpus is denied. No certificate of appealability will issue.

An appropriate Order follows.

                                            **s/ Jerome B. Simandle**
                                            JEROME B. SIMANDLE, Chief Judge
                                            United States District Court

Dated: **April 10, 2014**